Rel: August 14, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2026

_____

## SC-2025-0918

_____

## Ex parte State Farm Fire and Casualty Company

## PETITION FOR WRIT OF MANDAMUS

## (In re: James M. Foor and Krystina Foor

## v.

## State Farm Fire and Casualty Company)

## (Bullock Circuit Court: CV-25-900001)

MENDHEIM, Justice.

State Farm Fire and Casualty Company ("State Farm") petitions this Court for a writ of mandamus directing the Bullock Circuit Court to remove any "sharing" provisions from a protective order it entered concerning materials that the plaintiffs, James M. Foor and Krystina Foor, sought in discovery from State Farm. We grant the petition in part, deny it in part, and issue the writ.

## I. Facts

In their complaint, the Foors allege that they have a homeowners' insurance policy issued by State Farm that includes coverage for storm damage to their home located in Union Springs. They assert that, in the first week of January 2024, a storm that came through the area where their home is located caused significant wind and hail damage to the home's roof. The Foors allege that they made a timely claim on their homeowners' insurance policy, that they obtained a quote from a qualified roofing contractor who estimated that repairs to the damaged roof would cost $9,112.02, and that they presented that quote to State Farm. The Foors assert that State Farm "adjusted the claim in a cursory fashion and offered to settle the claim" for a cost of $4,059.10.

2

On January 9, 2025, the Foors commenced an action in the Bullock Circuit Court against State Farm, asserting claims of breach of contract and bad faith and alleging that "State Farm has a pattern and practice of lowballing roofing claims and, upon information and belief, has implemented a program to reduce roof payouts without regard to the merits of the claim." The Foors sought damages for roof replacement and mental anguish and punitive damages.

The Foors' counsel served written discovery with the complaint, but State Farm objected to the requests on the ground that the requests were overbroad and burdensome. The Foors filed a second request for production of documents that State Farm objected to for similar reasons. On September 5, 2025, the Foors filed a motion to compel in which they requested that the circuit court enter an order requiring State Farm "to fully and properly respond to an outstanding deposition notice, interrogatories, and requests for production."

On September 24, 2025, the Foors filed a "Motion for Entry of a Sharing Protective Order" in which they stated that "[t]he parties have been attempting to negotiate the terms of a protective order. The primary breakdown between the parties can be boiled down to one issue: [State

Farm] does not want a 'sharing' provision in the Protective Order." In that motion, the Foors quoted several decisions from other jurisdictions in which courts had approved the sharing in parallel lawsuits of information produced in discovery because it promotes litigation speed, reduces litigation costs, forces parties to be consistent in their responses, and conserves judicial resources. The Foors' motion also cited multiple Alabama cases in which trial courts had entered protective orders with sharing provisions. The Foors attached a proposed protective order to the motion, which, in part, stated:

> "All such materials furnished shall be available to counsel for the requesting party to use in this case, cases in which other attorneys represent plaintiffs with similar claims of bad faith against State Farm, and in the following cases:
>
> "Byers v. State Farm Fire and Casualty Company Circuit Court of Jefferson County, Alabama Case No. 01-cv-2025-900479.00
>
> "Cook v. State Farm Fire and Casualty Company
>
> "Foor v. State Farm Fire and Casualty Company Circuit Court of Bullock County, Alabama Case No. 09-cv-2025-900001.00
>
> "Hager v. State Farm Fire and Casualty Company
>
> "Parker v. State Farm Fire and Casualty Company U.S. D.C., Northern District of Alabama Case No. 2:25-cv-00281-NAD

4

"<u>Phornroekngam v. State Farm Fire and Casualty Company</u> U.S. D.C., Northern District of Alabama Case No. 5:25-cv-01152-HNJ

"<u>Reeves v. State Farm Fire and Casualty Company</u> U.S. D.C., Northern District of Alabama Case No. 2:25-cv-00342-SGC

"<u>Robinson v. State Farm Fire and Casualty Company</u> U.S. D.C., Northern District of Alabama Case No. 4:25-cv-01260-RDP

"<u>Walker v. State Farm Fire and Casualty Company</u> Circuit Court of Autauga County, Alabama Case No. 04-cv-2025-900165.00."

On October 10, 2025, State Farm filed its own motion for a protective order in which it contended that the Foors' motion for a protective order containing sharing provisions "seek[s] permission to disseminate State Farm's confidential documents to counsel nationwide and unspecified governmental entities, amplifying the risk of irreparable harm to State Farm's proprietary interests through widespread sharing of materials that may ultimately prove irrelevant or disproportionate to the instant case."

On October 16, 2025, State Farm filed its response to the Foors' motion to compel in which it contended that it had provided

"materials directly relevant to the [Foors'] single homeowners' insurance claim arising from alleged January 2024 storm damage to their roof, including the complete Claim File, the applicable Policy, and underwriting materials. <u>State Farm will also produce applicable Operations Guides and will agree to produce additional documents relating to the training of those involved in [the Foors'] claim upon entry of a protective order</u>."

(Emphasis added.)

On October 17, 2025, State Farm filed its response in opposition to the Foors' motion for a protective order that contained more arguments against the sharing provisions in the Foors' proposed protective order. In that response, State Farm asserted that

"[n]o Alabama court has ever permitted a sharing provision in any bad faith insurance litigation, much less one as sweeping as this. Thus, [the Foors'] request invites the Court to issue a first-of-its-kind ruling without any on-point precedential support -- thereby risking exposure of State Farm's trade secrets and undermining its right to safeguard such proprietary information. Indeed, [the Foors] rely on cases touting the benefits of discovery sharing among plaintiffs in product defect claims, but that rationale does not extend to single-loss insurance disputes like this one, nor do the Alabama Rules of Civil Procedure support such a demand."

(Emphasis omitted.) State Farm described the Foors' proposed protective order as "an atypical 'sharing protective order' -- an oxymoron that pits unrestricted sharing against the very protection that protective orders are meant to provide: authorizing dissemination well beyond the confines

of this case." (Id. at p. 2.) State Farm predicted that granting the Foors' proposed protective order would "produce a chilling effect that will discourage parties from voluntarily offering to produce their confidential and proprietary information in discovery, as the risk of broad redisclosure will be too high." State Farm attached to its response its own proposed protective order that contained no provisions for sharing in any other case information designated as "confidential, trade secret, or subject to [the] protective order." State Farm's proposed protective order did contain a provision stating, in pertinent part:

"8. Information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER by State Farm shall be disclosed only to the following persons:

"....

"(h) the Alabama Department of Insurance, law enforcement officers, and/or other government agencies, as permitted or required by applicable state and federal law."

(Capitalization in original.) State Farm asserted in its response that the Foors' counsel

"has previously agreed to entry of the same or substantially similar protective order in other cases against State Farm. See, e.g., Lang et al v. State Farm Fire & Casualty Company, Case No. 4:21-CV-01301-CLM (N.D. Ala.); Vance v. State Farm Fire & Casualty Company, Case No. 2:22-CV-00484-

7

GMB (N.D. Ala.); <u>Simmons et al. v. State Farm Fire & Casualty Company</u>, Case No. 2:23-CV-00196-NAD (N.D. Ala.). [The Foors] have not articulated a reason why State Farm's proposed protective order language is no longer acceptable."

State Farm cited in its response multiple federal cases that rejected sharing provisions in protective orders. In response to the Foors' list of Alabama cases in which trial courts have included sharing provisions in protective orders, State Farm argued that "all these cases appear to involve product defect allegations." State Farm contended that product-defect cases are different than insurance disputes because "first party insurance cases can stem from a wide range of legal, factual, and procedural factors, including (but not limited to) policy coverage and exclusions, cause of damage, type of damage, policyholder conduct, claim defects, etc."

On October 20, 2025, Circuit Court Judge L. Bernard Smithart held a hearing concerning the competing protective-order proposals. On October 30, 2025, the circuit court entered a protective order that, in pertinent part, provided:

"A. State Farm Fire and Casualty Company ('State Farm') possesses certain information and documents that contain confidential, proprietary, or trade secret information that may be subject to discovery in this action, but that should

8

not be made publicly available.

"B. The parties requested that the Court enter a Protective Order to properly balance the discovery rights of the [Foors] with State Farm's rights to protect its private, confidential, proprietary, or trade secret information.

"C. Information obtained from State Farm in discovery which does not constitute trade secret or other confidential research development, or commercial information is not the subject of this Stipulated Order.

"....

"<u>All such materials furnished shall be available to counsel for the requesting party to use in this case and in any cases in which counsel for the Foors also represent parties that have made claims of bad faith against State Farm relative to a roof claim</u>.

     "a. Such material shall not be produced to any commercial competitor insurer of the party producing the data;

     "b. <u>Any such materials may be disclosed to any governmental agency, which has oversight authority to study issues pertinent to the insurance product at issue</u>. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential;

     "c. Such materials may be provided to the court in connection with consideration of any motion but shall be filed with a request that it be

placed under seal;

"d. The data produced hereto may not otherwise be sold, offered, advertised or publicized to any media representative.

"Should a requesting party dispute that materials produced constitute trade secret or other confidential research, development, or commercial information, said party shall notify the producing party which may, within 20 days, move for a determination that the materials are entitled to confidentiality. Under such circumstances, the producing party bears the burden of proving the propriety of designating an item as confidential. If no motion is brought within 20 days, the materials shall not be considered subject to this Order. If a motion is brought, the materials shall be handled in accordance with this order until the motion is ruled upon, and thereafter shall be subject to this order if the court determines that the material is confidential research, development, or commercial information.

"<u>Confidential materials may be disclosed to attorneys or other office personnel, experts, contractors, and consultants, working with counsel for the requesting party in the prosecution of the case. If anyone outside the confines of the office of counsel is to receive information covered by this Stipulation, they must agree in writing to the terms of this Stipulated Order</u>.

"....

"The recipient of any information designated CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER pursuant to this Agreement shall maintain information in a secure and safe area and shall exercise due and proper care with respect to the storage, custody and use of all such information.

"....

"The obligations of this Protective Order shall survive the termination of this action and continue to bind the parties and their counsel. The Court will have continuing jurisdiction to enforce this Protective Order irrespective of the manner in which this action is terminated.

"Within thirty-five (35) days of the final determination of this action, each person or party who has received information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER shall be obligated to return the same to State Farm, including any copies, or to destroy such information and certify that it has been destroyed, except that the recipient need not destroy or return transcripts of depositions and materials filed with the Court, and party may retain one archival copy of all pleadings in the action, regardless of whether such pleadings (including appendices), contain or refer to information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER; subject to the legal requirements for maintenance and destruction of client files by the parties' counsel. Within seven (7) days of the final determination of this action, counsel of record who has provided information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER to other individuals must inform those individuals that the matter has reached final determination and remind them of the return or destruction obligation.

"This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard."

(Capitalization in original; emphasis added.)

Attached to the protective order was a document titled "Exhibit A

11

-- Agreement To Be Bound By Protective Order" ("the exhibit agreement"). That exhibit agreement provided: "The undersigned _____, hereby acknowledges receipt of that certain Protective Order entered in Case No. 09-CV-2025-900001, in the Circuit Court of Bullock County, Alabama, Foor v. State Farm. I have reviewed that Protective Order and hereby Agree to be bound by the terms thereof." Under that language were blank lines for the signature of the person agreeing to be bound by the protective order and the date the exhibit agreement would be executed.

On December 2, 2025, State Farm filed with this Court a petition for the writ of mandamus "directing the Bullock ... Circuit Court to vacate its October 30, 2025, protective order and to enter, in its place, a non-sharing protective order that protects State Farm's trade secrets and confidential information to the maximum extent practicable." State Farm's petition, p. 1. Along with its petition, State Farm filed an emergency motion to "stay production of State Farm's confidential and/or trade secret information, for which no adequate protective order is in place, pending the Court's consideration of State Farm's mandamus petition." State Farm's emergency motion, p. 2. On December 4, 2025,

this Court granted State Farm's emergency motion for a stay pending this Court's review of State Farm's petition.[1] On January 29, 2026, this Court ordered answers and briefs in response to State Farm's petition. On April 6, 2026, this Court set this case for oral argument, which was held on June 3, 2026.

## II. Standard of Review

"Mandamus is an extraordinary remedy and will be granted only where there is '(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So. 2d 889, 891 (Ala. 1991). This Court will not issue the writ of mandamus where the petitioner has '"full and adequate relief"' by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So. 2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)).

"Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So. 2d 859, 862 (Ala.

---

[1]On December 30, 2025, State Farm filed a second petition for the writ of mandamus in this case concerning a November 20, 2025, order of the circuit court that had granted the Foors' motion to compel responses to propounded discovery. State Farm argued that the discovery requests were "overly broad, irrelevant, and unduly burdensome." On January 29, 2026, this Court denied that petition on the ground that it was "prematurely filed." Ex parte State Farm Fire & Cas. Co., No. SC-2025-1005.

13

1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions."

Ex parte Ocwen Fed. Bank, FSB, 872 So. 2d 810, 813 (Ala. 2003). See also Ex parte Dorsey Trailers, Inc., 397 So. 2d 98, 102 (Ala. 1981) ("The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful.").

## III. Analysis

### A. Specific Determinations About Confidentiality Are Not Before Us

Before we address the central issue presented by State Farm's mandamus petition, we take a moment to clarify that we are not concerned here with whether the information State Farm will provide under the auspices of the protective order is, in fact, "confidential, proprietary, or trade secret information." The parties debate whether the information that may be provided is confidential. State Farm claims that

14

its Operations Guides, Standard Claim Processes, and Jurisdictional References are "indisputably confidential and trade secret information." State Farm's petition, p. 11. The Foors observe that, "[w]hile State Farm's Affidavit of Michael Aaron Carter indicates that only some portions of the Operation Guide are confidential, State Farm has refused to produce any portion of it," and the Foors "question[] why State Farm, a policyholder-owned mutual company, is so intent on keeping its written procedures for handling claims secret anyway." Foors' answer, pp. 7, 18-19 (citations to appendices omitted).

However, those arguments are not pertinent to the question presented by this petition because, under the terms of the protective order, State Farm is free to designate any materials requested by the Foors as "trade secret" or "confidential," but if the Foors question such a designation, State Farm must file a motion with the circuit court seeking a determination about confidential status, and State Farm will bear the burden of demonstrating that the materials are, in fact, confidential.[2]

---

[2]Because the protective order essentially postpones any disagreements the parties may have with respect to whether particular information provided by State Farm in discovery contains confidential, proprietary, or trade-secret information, the protective order is what is sometimes described as an "umbrella" protective order. See, e.g., 8A

That procedure aligns with the burden-shifting process prescribed by this Court when a party seeks to invoke a trade-secret privilege, but it does not implicate a portion of the protective order challenged by State Farm's petition for the writ of mandamus.[3]

---

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2035 (3d ed. 2010) ("Protective orders have often been sought by agreement, particularly regarding confidential information and in litigation likely to involve a large volume of documents. Frequently these agreements propose 'umbrella' protective orders that authorize any person producing information to designate that which is confidential as protected under the order.").

[3]
     "With regard to proprietary or trade-secret information, this Court has stated:

     "'A party asserting the trade-secret privilege has the initial burden of showing that the information sought to be shielded from disclosure constitutes a trade secret the disclosure of which would result in injury. Ex parte Miltope, 823 So. 2d [640,] 644 [(Ala. 2001)]. If such a showing is made, the burden then shifts to the party seeking the disclosure of the trade secret to show that the information "is both necessary and relevant to the litigation." II Charles W. Gamble and Robert J. Goodwin, McElroy's Alabama Evidence § 361.02(5) (6th ed. 2009). The trial court then "conducts a balancing process under which it decides whether the need for the information outweighs any harm

## B. Rule 26 and Sharing Provisions

The October 30, 2025, protective order contains two provisions with which State Farm takes issue. Those provisions state:

> "All such materials furnished shall be available to counsel for the requesting party to use in this case and in any cases in which counsel for the Foors also represent parties that have made claims of bad faith against State Farm relative to a roof claim.
>
> "....
>
> "b. Any such materials may be disclosed to any governmental agency, which has oversight authority to study issues pertinent to the insurance product at issue. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential."

The question presented is whether the circuit court clearly exceeded its discretion by including the foregoing provisions in the protective

---

> that would result from its disclosure." Id., at § 361.02(3).'
>
> "Ex parte Michelin N. Am., Inc., 161 So. 3d 164, 170-71 (Ala. 2014)."

Ex parte Harbor Freight Tools USA, Inc., 331 So. 3d 88, 96-97 (Ala. 2021).

17

order. As we will detail, the parties' arguments concerning that issue contain nuances, but we believe it is best to start our analysis with "Rule 26, Ala. R. Civ. P., [which] governs the discovery of information in civil actions." Ex parte Henry, 770 So. 2d 76, 79 (Ala. 2000). In pertinent part, Rule 26, Ala. R. Civ. P., provides:

> "(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
>> "(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is: (i) relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party; and (ii) proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
>> "....
>
> (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or,

18

alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way ...."

We begin with Rule 26 because the overall tenor of the arguments presented by State Farm and the entities who have filed amicus curiae briefs in support of State Farm seems to be that the dissemination of any information garnered in discovery to those not involved in this case is contrary to that rule. In its petition, State Farm argues that the provisions at issue do "not align with Rule 26's case-specific limits" and that "[c]onverting discovery in this case into a pipeline for State Farm's proprietary information distorts Rule 26's case-specific requirements."[4] State Farm's petition, pp. 19-20, 21.

---

[4]In its petition and reply brief and in oral argument, State Farm contended that this Court's decision in Ex parte Mobile Infirmary Ass'n, 279 So. 3d 1129, 1134 (Ala. 2018), was analogously pertinent in this regard. Mobile Infirmary was a medical-malpractice case in which a trial court's protective order permitted the plaintiff's counsel to "'shar[e] the Confidential Information obtained in this Lawsuit with other partners, associates and staff of the same law firm who may be involved in other litigation against Mobile Infirmary.'" Id. at 1131. This Court concluded that the sharing provision was inappropriate because it "effectively

19

Notably, State Farm does not elaborate on those statements anywhere else in its petition or in its reply brief, apparently electing to leave the details of its Rule 26 argument to the entities that filed amicus curiae briefs in support of State Farm. That is a questionable strategy given that

> "'"[i]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' <u>Butler v. Town of Argo</u>, 871 So. 2d 1, 20 (Ala. 2003)(quoting <u>Dykes v. Lane Trucking, Inc.</u>, 652 So. 2d 248, 251 (Ala. 1994))."

<u>Ex parte Borden</u>, 60 So. 3d 940, 943 (Ala. 2007). Moreover,

> "[t]his Court has stated that it 'will not decide a question presented by amicus curiae which was not presented by the parties to the cause, and will leave the question for decision when properly raised and presented.' <u>State ex rel. Baxley v. Johnson</u>, 293 Ala. 69, 74, 300 So. 2d 106, 110 (1974)."

---

creates an 'end run' around the limitations on discovery set forth in § 6-5-551[, Ala. Code 1975]." <u>Id.</u> at 1134. Section 6-5-551, Ala. Code 1975, provides that "[a]ny party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." Thus, the ruling against the sharing provision at issue in <u>Mobile Infirmary</u> was based on a specific discovery prohibition in the Alabama Medical Liability Act of 1987, § 6-5-540 et seq., Ala. Code 1975, not on any restriction contained in Rule 26 of the Alabama Rules of Civil Procedure. Nonetheless, State Farm insisted at oral argument that the sharing provisions in the protective order constitute an "end run" around Rule 26. The authorities provided in the body of this opinion demonstrate otherwise.

Hanes v. Merrill, 384 So. 3d 616, 621 n.3 (Ala. 2023). Thus, the argument that sharing provisions in a protective order are per se prohibited by Rule 26 is arguably foreclosed by Rule 28(a)(10), Ala. R. App. P., because State Farm never expressly presented it to us or provided any supporting authority for it.

Nonetheless, the amicus curiae brief from the Alabama Defense Lawyers Association ("ADLA") asserts that "[n]othing in Alabama law transforms discovery into a mechanism for arming other litigants with a defendant's confidential information," and for support of that assertion it states that "the scope of discovery is limited to non-privileged matter that is 'relevant to the subject matter involved in the pending action.' Ala. R. Civ. P. 26(b)(1) (emphasis added)." ADLA's brief, p. 13. The joint amicus curiae brief from the Chamber of Commerce of the United States and the American Tort Reform Association ("COC-ATRA") contends that "[t]he central problem with sharing is that it permits future collateral plaintiffs to 'obtain discovery' that is not 'proportional to the needs of the case,' in violation of Alabama Rule of Civil Procedure 26(b)(1) ...." COC-ATRA's brief, p. 20.

However, in promoting the idea that Rule 26 prohibits the dissemination of information obtained in discovery beyond the specific case in which the information is obtained, State Farm and its amici fail to correctly interpret the rule's language, bypass overwhelming legal authority concerning the nature of discovery, and contradict other statements in their own briefs. First, when Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is ... relevant to the subject matter involved in the pending action ... and ... proportional to the needs of the case," it is clearly referring to what information may be "obtain[ed in] discovery," not whatever a party might do with that information once it is obtained. There is a distinct difference between what information a party is entitled to receive in discovery and what a party is entitled to do with that information once it is received. The language in Rule 26(b)(1) concerns the former, not the latter.

Indeed, one of the cases upon which State Farm and all its amici heavily rely, Byrd v. U.S. Xpress, Inc., 26 N.E.3d 858, 863 (Ohio Ct. App. 2014), openly states: "We start with the premise that absent a protective order, parties to a lawsuit may generally disseminate discovered

22

materials as they wish. <u>See</u>, <u>e.g.</u>, <u>Jepson Inc. v. Makita Elec. Works, Ltd.</u>, 30 F.3d 854, 858 (7th Cir. 1994)." The <u>Byrd</u> court is far from alone in expressing that concept. "A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal. The federal rules do not themselves limit the use of discovered documents or information." <u>Harris v. Amoco Prod. Co.</u>, 768 F.2d 669, 683-84 (5th Cir.1985) (internal citations omitted).[5] "[T]he Federal Rules do not prohibit collaboration among litigants." <u>Waelde v. Merck, Sharp & Dohme</u>, 94 F.R.D. 27, 30 (E.D. Mich. 1981). "The federal rules do not foreclose collaboration among litigants, and the court does not consider the possibility that plaintiff will share the results of discovery with any other litigant any part of defendant's showing of good cause to justify a protective order." <u>Parsons v. General Motors Corp.</u>, 85 F.R.D. 724, 726 n.1 (N.D. Ga. 1980). "Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the

---

[5]"[S]ince the Alabama Rules of Civil Procedure are modeled on the Federal Rules of Civil Procedure, federal decisions are highly persuasive when we are called upon to construe the Alabama Rules." <u>City of Birmingham v. City of Fairfield</u>, 396 So. 2d 692, 696 (Ala. 1981).

23

purposes of the Federal Rules of Civil Procedure." United States v. Hooker Chems. & Plastics Corp., 90 F.R.D. 421, 426 (W.D.N.Y. 1981). "There is nothing inherently culpable about sharing information obtained through discovery." Patterson v. Ford Motor Co., 85 F.R.D. 152, 154 (W.D. Tex. 1980).

The courts' understanding about discovery sharing draws directly from the fact that the power granted to trial courts in Rule 26(c) to issue protective orders constitutes a limitation on the broad discovery permitted under Rule 26(b). "Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).[6]

---

[6]Courts sometimes have become confused by the United States Supreme Court's statement in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984), that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit," taking it to mean that a party cannot share information obtained in discovery outside the lawsuit in which it was obtained. See, e.g., Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. 382, 387 (D. Colo. 2000) (stating that "a party has no right to make unrestricted disclosure of the information obtained through discovery"). But Rhinehart was concerned with whether a protective order violated the First Amendment rights of a newspaper to disseminate information obtained from an adverse party in discovery. In other words, Rhinehart held that protective orders do not violate the First Amendment because the public does not have a

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. See Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, at 944-45 (7th Cir. 1999); Public Citizen[ v. Liggett Grp., Inc.], 858 F.2d [775,] 789 [(1st Cir. 1988)]; In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987). Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown."

San Jose Mercury News, Inc. v. United States Dist. Ct.--N. Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999). See also Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1128 n.1 (9th Cir. 2003) ("Absent court order or a private agreement, the Foltz parties would be free to disclose their discovered materials to collateral litigants."); Humboldt

---

constitutional right to access discovery materials. It did not hold that the First Amendment prohibits a party to litigation from disseminating discovery materials in the absence of a protective order. See, e.g., Newcomb v. Esurance Ins. Servs., Inc., No. 15-cv-02062-LTB-KMT, Oct. 25, 2017, n.1 (D. Colo. 2017) (not reported in Federal Supplement) ("This is not to say that the public has a right to access discovery material. It clearly does not and that is why discovery material is exchanged between the parties, not filed with the court."); A Project of The Sedona Conference Working Group on Protective Orders, Confidentiality & Public Access (WG2), The Sedona Guidelines: Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases March 2007 Post-Public Comment Version, 8 Sedona Conf. J. 141, 143 (2007) ("In the discovery context, there is no presumption of public access to unfiled discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984). There is also no prohibition against a party disseminating information obtained through discovery.").

25

Baykeeper v. Union Pac. R.R., 244 F.R.D. 560, 563 (N.D. Cal. 2007) (observing that Rule 26(c) "creates a presumption in favor of freedom of dissemination"); Baker v. Liggett Grp., Inc., 132 F.R.D. 123, 125 (D. Mass. 1990) ("'It is implicit in Rule 26(c)'s "good cause" requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public.'" (citation omitted)). See generally Clippard v. Yamaha Motor Corp., No. 5:14-CV-83-R, Mar. 17, 2015 (W.D. Ky. 2015) (not reported in Federal Supplement) ("[I]f the court deems the information confidential, the appropriate procedural safeguards (for example, sharing versus non-sharing) that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion." (citing R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 269 (6th Cir. 2010))).

Familiarity with some of or all the foregoing authorities probably accounts for the reason that the amici supporting State Farm reluctantly admit that discovery sharing is permissible in some circumstances.[7] See

---

[7]To be sure, the amici supporting State Farm, such as COC-ATRA, contend that the "the real-world trend" in the federal courts is against "upfront" discovery-sharing provisions -- provisions that permit sharing at the outset of discovery production between the parties. COC-ATRA's brief, p. 13. On the other hand, United Policyholders, the amicus curiae

ADLA brief, p. 15 ("To be sure, these courts have not held that sharing can <u>never</u> occur." (emphasis in original)); COC-ATRA's brief, pp. 10, 20 ("<u>Amici</u> do not doubt that discovery sharing may be appropriate in certain narrow circumstances." "None of this is to say that <u>amici</u> oppose discovery sharing in all circumstances."). In short, even the amici supporting State Farm tacitly admit that Rule 26 does not prohibit the dissemination of discovery materials outside the specific case in which the information is obtained. It is just that they oppose it in this instance that (presumably) involves confidential and trade-secret information.

<u>C. The Limiting Language of the Protective Order</u>

The thrust of State Farm's more specific argument is that the two provisions of the protective order to which it objects "expose[] State Farm to immediate, irreparable competitive harm" because, it says, "the

---

supporting the Foors, argues that "[a] vast array of decisions, many recent, confirm that such provisions were warranted for the same reasons argued by [the Foors]." United Policyholders brief, p. 13. The upshot of all the case citations from both sides is that "jurisdictions appear to be split on whether sharing provisions are appropriate or useful." <u>Butler v. Daimler Trucks N. Am. LLC</u>, No. 19-2377-JAR, Jan. 10, 2020 (D. Kan. 2020) (not reported in Federal Supplement). See also <u>Byrd v. U.S. Xpress, Inc.</u>, 26 N.E.3d 858, 863 (Ohio Ct. App. 2014) ("[T]he legal databases are replete with cases where sharing has been allowed, and also with cases where it has not been allowed.").

information at issue -- including, for example, State Farm's proprietary Operations Guides ('OGs'), Standard Claim Processes ('SCPs'), and Jurisdictional References ('JRs') -- embody confidential and trade secret claims-handling procedures, methods, and systems." State Farm's petition, pp. 9-10 (footnote omitted). State Farm asserts that "the Protective Order anticipates and allows [the Foors'] counsel to share these confidential and trade secret materials with third parties (other plaintiffs' counsel and governmental entities) outside this litigation, thereby effectively nullifying any protections for State Farm." Id., p. 11. That is so, State Farm surmises, because

> "this Order's framework permits dissemination across unrelated proceedings, triggered by [the Foors'] counsel adding their names to any case in any jurisdiction -- enabled by licenses in Texas, Washington State, Georgia, and Colorado's District Court, or expanded via pro hac vice admissions elsewhere. It also permits disclosure to 'any governmental agency' that has 'oversight authority to study issues pertinent to the insurance product at issue,' nationwide."

Id., pp. 15-16. State Farm goes so far as to claim that the protective order "grant[s the Foors' counsel] carte blanche to disseminate [State Farm's] confidential and/or trade secret information at their discretion and without any safeguards." Id., p. 16.

28

For their part, the Foors contend that

"State Farm and their amici attack an order and a problem that does not exist. State Farm and their amici decry an attempt to create a 'sharing regime' and a national 'clearinghouse for unrelated litigation' that envisions the [Foors'] counsel traipsing across the country, selling State Farm's information to the highest bidder. The actual Protective Order and the actual facts before this Court do not present that picture.

"The Protective Order provides that information may only be used for the present case or other cases involving bad faith roof cases against State Farm in which the undersigned also represent the policyholders. It provides that the information must be kept confidential, cannot be supplied to competitors, cannot be sold and must be returned at the end of the litigation. In addition, any non-law firm personnel must agree in writing to be bound by the order."

Foors' answer, p. 13.

What is striking about the parties' diametrically opposing views of what sharing the protective order allows is that neither side directly focused on the specific language of the provisions in their briefs, and the members of the Court noticed that lack of specificity again during oral argument.[8] However, it is this Court's responsibility to focus on the protective order's language because it is the parameters that the

---

[8]During oral argument, counsel for both sides at times seemed unfamiliar with the specific language of the protective order.

protective order actually provided that determine whether the circuit court exceeded its discretion by including the sharing provisions in the protective order.

The central sharing provision in the protective order states: "All such materials furnished shall be available <u>to counsel for the requesting party to use</u> in this case and <u>in any cases in which counsel for the Foors also represent parties that have made claims of bad faith against State Farm relative to a roof claim</u>." (Emphasis added.) As the rendition of facts relates, the proposed protective order that the Foors attached to their "Motion for Entry of a Sharing Protective Order" listed eight other cases in which the Foors' counsel had commenced actions on behalf of parties who asserted bad-faith claims against State Farm concerning roof damage. The Foors' answer lists seven other cases that they assert are "bad faith cases that the counsel in this case are handling against State Farm in Alabama involving allegations of a national program to deny or

reduce roof damage claims involving wind or hail."[9] Foors' answer, pp. 5-6.[10]

Although the Foors' proposed protective order, unlike the circuit court's October 30, 2025, protective order, listed eight specific additional cases, the proposed order's sharing provision contained considerably broader language than the circuit court's protective order -- language that was not limited to those listed cases: "All such materials furnished shall be available <u>to counsel for the requesting party to use in</u> this case, <u>cases in which other attorneys represent plaintiffs with similar claims of bad faith against State Farm, and in the following cases</u>: ...." (Emphasis added.)

Comparing the language of those two provisions, it is clear that the circuit court intended to limit discovery sharing to the cases that the

---

[9]The case that is listed in the Foors' proposed protective order that is not listed in their answer is "<u>Robinson v. State Farm Fire and Casualty Company</u> U.S. D.C., Northern District of Alabama Case No. 4:25-cv-01260-RDP." The Foors do not explain in their answer the reason for their omission of <u>Robinson</u>. State Farm discusses <u>Robinson</u> in its reply brief.

[10]Like the Foors' answer, United Policyholders' amicus curiae brief states that "the circuit court's order only permits [the] Foors' counsel to utilize the information in matters in which they are actively representing a similarly situated policy holder." United Policyholders brief, p. 18.

Foors' counsel already had commenced at the time the protective order was entered in which bad-faith claims involving roof damage had been alleged, i.e., to the eight other cases listed in the Foors' proposed protective order. The language in the protective order, in contrast to the language in the Foors' proposed order, leaves out cases commenced by other attorneys, does not use the more generalized description of "cases ... with similar claims of bad faith against State Farm," and limits the sharing cases to those in which "parties ... have made claims" -- cases that already had been commenced at the time the protective order was entered by the circuit court.

State Farm's response to that straightforward interpretation of the protective order is twofold. First, it asserts: "That narrow appellate framing does not align with the briefing that procured the [protective] Order." State Farm's reply brief, p. 3. But the fact that the Foors asked for a broader sharing provision from the circuit court is irrelevant to what the protective order actually provides. Second, State Farm insists:

> "[The protective order] is not limited to the eight cases listed in the Response Brief or to cases pending in Alabama. ... The fact remains the Protective Order would allow for counsel to be added to any bad-faith roof case against State Farm nationwide -- especially given counsel's licensure in Washington and Texas and the ability to appear pro hac vice

32

elsewhere -- and then use that appearance as a basis to disseminate State Farm's confidential information (including to unspecified governmental entities)."

Id., p. 4.

We will address the government-sharing provision later in this opinion, but State Farm's reading of the primary sharing provision simply ignores the protective order's use of past-tense language in describing the cases in which the discovery materials may be shared. There is no language in the protective order authorizing the Foors' counsel simply to affiliate with other counsel -- in other states in which they are licensed or as pro hac vice counsel -- to share the discovery material in cases beyond those that already have been commenced by parties who are represented by the Foors' counsel.

In fact, if it was not for the performance of the Foors' counsel at oral argument, we would find State Farm's reading of the protective order entirely implausible. But we cannot ignore the fact that, at oral argument, the Foors' counsel changed course from what was argued in the Foors' answer by contending that the protective order would allow them to share the discovery information in <u>future</u> cases commenced by the Foors' counsel (or cases commenced by other counsel with whom the

Foors' counsel associated) asserting bad-faith claims for roof damage against State Farm.[11] Because of that, we find it necessary to direct the circuit court to clarify its protective order by listing the specific cases in which the Foors' counsel are permitted to use the discovery materials furnished to them by State Farm, which is, at most, the eight other cases listed in the Foors' proposed protective order.

Limiting the sharing of the discovery materials to specific, existing cases addresses the recurring objection some courts have expressed with respect to proposed sharing provisions.

> "[M]any of the courts that have authorized sharing protective orders have required terms that ensure that sharing will be limited to situations where there is a similarity between the lawsuits. See, e.g., McDaniel v. Freightliner Corp., S.D.N.Y. No. 99 Civ. 4292 ... (Mar. 23, 2000); see also Gunson v. BMO Harris Bank, N.A., 300 F.R.D. 581, 584 (S.D. Fla. 2014). ... And courts frequently reject sharing provisions where the requesting party cannot specifically identify any collateral proceedings. See, e.g., Menendez v. Wal-Mart Stores E. LP, N.D. Ind. No. 1:10-cv-53 ... (Jan. 11, 2012)."

Byrd, 26 N.E.3d at 865. See, e.g., Foltz, 331 F.3d at 1132 ("[T]he collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. ... Such

---

[11]We note that "an issue cannot be raised for the first time at oral argument." Griggs v. NHS Mgmt., LLC, 419 So. 3d 12, 19 n.2 (Ala. 2024).

relevance hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.'" (quoting Laurie Kratky Dore, Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement, 74 Notre Dame L. Rev. 283, 366-67 (1999))); Butler v. Daimler Trucks N. Am. LLC, No. 19-2377-JAR, Jan. 10, 2020 (D. Kan. 2020) (not reported in Federal Supplement) (rejecting the plaintiff's proposed sharing provision in a protective order concerning confidential information because it would have allowed the information to be shared with "'lawyers involved in ... contemplated lawsuits against Defendants,'" but allowing plaintiffs to file "a targeted motion with the court" in the future if the plaintiffs show "good cause to share specific information ... with a specific third-party"); Naramore v. Daimler Trucks N. Am., LLC, No. 1:18-CV-156 (LAG), Apr. 3, 2019 (M.D. Ga. 2019) (not reported in Federal Supplement) ("Plaintiff's proposed sharing provision, as currently written, goes far beyond disclosure to other parties involved in similar litigation. Thus, there simply is 'no way to determine whether the discovery in this matter is ... relevant to any' other party with whom Plaintiff seeks to share discovery."); Alton v. Medtronic, Inc., No. 3:13-CV-409-PK, Mar. 13, 2014

(D. Or. 2014) (not reported in Federal Supplement) (approving a sharing provision in part because "Alton's proposed protective order would allow discovery-sharing only with parties to litigation against Medtronic raising factual and legal issues materially indistinguishable from those raised in this litigation"); Lohr v. Zehner, No. 2:12cv533-MHT, Mar. 6, 2014 (M.D. Ala. 2014) (not reported in Federal Supplement) (rejecting a proposed sharing provision in a protective order because "plaintiff has failed to come forward with information concerning any 'substantially similar' cases that are currently in progress or immediately contemplated for filing; instead, plaintiff asserts only the speculative future interests of unidentified non-parties and unnamed attorneys in unspecified collateral actions"); Menendez v. Wal-Mart Stores E. LP, No. 1:10-cv-53, Jan. 11, 2012 (N.D. Ind. 2012) (not reported in Federal Supplement) (declining to approve a requested sharing provision in a protective order because "[p]laintiffs have failed to provide any evidence that such collateral lawsuits actually exist. Consequently, any purported gain in judicial efficiency achieved in other cases through 'sharing orders' is purely hypothetical in this case."); Harris v. Kellogg, Brown & Root Servs., Inc., No. 08-563, Dec. 15, 2008 (W.D. Pa. 2008) (not reported in

Federal Supplement) (stating that the cases in which sharing provisions have been approved "involved not only the same defendant but also the same cause of action as opposed to sharing based on the broad scope of 'negligent or wrongful activities' of Defendant" and concluding that, "[i]n this Court's estimation, these decisions stand for the proposition that while sharing may be preferred, confidential information is best protected, if the court is able to determine with whom sharing is permitted").

Such limited sharing also has the undeniable benefit of helping litigation for all parties and the courts to be more efficient, speedy, and inexpensive -- goals that are openly stated in Rule 1 of the Alabama Rules of Civil Procedure. See, e.g., Ex parte Moore, 382 So. 2d 548, 550 (Ala. 1980) ("The Alabama Rules of Civil Procedure were adopted to effect an integrated procedural system vital to the efficient functioning of the courts and to secure the just, speedy and inexpensive determination of every action.").

> "Each plaintiff should not have to undertake to discover[] anew the basic evidence that other plaintiffs have uncovered. To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel. Efficient administration of

37

> justice requires that courts encourage, not hamstring, information exchanges such as that here involved."

Ward v. Ford Motor Co., 93 F.R.D. 579, 580 (D. Colo. 1982). See, e.g., Foltz, 331 F.3d at 1131 ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."); Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., 192 F. Supp. 3d 400, 407 (S.D.N.Y. 2016) ("Sharing discovery 'is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases.'" (quoting Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc., 287 F.R.D. 130, 134 (E.D.N.Y. 2012))); Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 546-47 (N.D. Ind. 1991) ("[T]he sharing of discovery materials ultimately may further the goals of Rule 1 by eliminating the time and expense involved in 're-discovery.' ... Maintaining a suitably high cost of litigation for future adversaries is not a proper purpose under Rules 1 or 26."); Cipollone v. Liggett Grp., Inc., 113 F.R.D. 86, 87 (D.N.J. 1986) ("By requiring each plaintiff in every similar action to run the same gauntlet over and over again serves no useful purpose other than to create barriers and discourage litigation against the defendants. Good cause as contemplated under Rule 26 was

never intended to make other litigation more difficult, costly and less efficient."); Burlington City Bd. of Educ. v. United States Min. Prods. Co., 115 F.R.D. 188, 190 (M.D.N.C. 1987) ("The sharing of information between even diverse plaintiffs promotes speedy, efficient and inexpensive litigation by facilitating the dissemination of discovery material necessary to analyze one's case and prepare for trial. It reduces repetitious requests and depositions, thereby conserving even defendant's time and expense in having to respond or attend the deposition. It conserves judicial resources by reducing the number of discovery motions and disputes. Permitting plaintiffs to share information helps counterbalance the effect uneven financial resources between parties might otherwise have on the discovery process, thereby protecting economically modest plaintiffs faced with financially well off defendants and improving accessibility to justice."); Byrd, 26 N.E.3d at 864 ("It may make little sense to force litigants in different lawsuits to 'reinvent the wheel' with their discovery efforts. [Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 497 (1991)]. Sharing reduces the 'wasteful' and

'unnecessary' duplication of discovery. Jepson[ Inc. v. Makita Elec. Works, Ltd.], 30 F.3d [854,] 861 [(7th Cir. 1994)].").

Moreover, allowing sharing in those already existing cases in which the Foors' counsel represent other plaintiffs with identical bad-faith claims acknowledges the reality that the Foors' counsel cannot forget the information once it is provided in this case. See BGC Partners, Inc. v. Avison Young (Canada) Inc., No. 2:15-cv-00531-RFB-GWF, Aug. 11, 2017 (D. Nev. 2017) (not reported in Federal Supplement) ("Because of the involvement of the same parties and attorneys in all of the cases, it is not feasible to prevent confidential information produced in this case from being possessed and known by the same parties and attorneys in the related cases.").

D. The Nonapplicability of Miltope and Halsey

When State Farm was confronted with the foregoing limited reading of the protective order's primary sharing provision, it continued to insist -- in its reply brief and during oral argument -- that the protective order still did not adequately protect State Farm's confidential and trade-secret information. To support that assertion, State Farm relied upon Ex parte Miltope Corp., 823 So. 2d 640 (Ala. 2001), and Ex

parte W.L. Halsey Grocery Co., 897 So. 2d 1028 (Ala. 2004), two cases in which this Court rejected protective orders entered by trial courts.

In Miltope, Miltope Corporation ("Miltope"), "a manufacturer of a variety of defense industry and nondefense industry electrical and technical products," 823 So. 2d at 641, was sued by Jefferson Daniel Kaylor, Jr., a former employee who alleged that Miltope did not honor his employment contract because Miltope failed to give Kaylor a commission he claimed was owed under his contract for selling certain computer equipment. Id. at 642. Significantly, Kaylor was employed by one of Miltope's competitors at the time he commenced his action against Miltope. In discovery, Kaylor requested documents from Miltope that Miltope asserted contained confidential information. The trial court ordered Miltope to produce the requested documents, but it "entered a protective order limiting the uses and dissemination that Kaylor and his attorneys could make of the documents." Id. This Court granted Miltope's mandamus petition, concluding that Miltope did not have to produce the requested documents "because of the irreparable harm the disclosure of its trade secrets could do to Miltope." Id. at 646. The Court deemed the

41

danger of Miltope's trade secrets falling into a competitor's hands to be high given that Kaylor worked for a competitor.

In Halsey, W.L. Halsey Grocery Co. ("Halsey") sued The Merchants Company, Inc. ("Merchants"), and three former employees of Halsey who left to go work for Merchants. Halsey alleged that the former employees and Merchants had disclosed or used Halsey's proprietary and confidential information and trade secrets, had violated nonsolicitation agreements, and were tortiously interfering with Halsey's customer relationships. In discovery, "the parties negotiated a confidentiality agreement to protect Halsey's customer information and any trade secrets and to prevent a party from using discovery to gain an unfair competitive advantage." 897 So. 2d at 1030-31. That confidentiality agreement allowed parties to designate material as "confidential" or "restricted confidential." Id. After disagreements ensued between the parties concerning what material Halsey had designated as restricted confidential, the trial court amended the confidentiality agreement "'to allow access to parties in this lawsuit to documents designated as highly

42

confidential.[12] This allows [Halsey] to prove damages prospectively and allows the Defendants to participate in the defense of their case'" Id. at 1032 (quoting trial court's order). In its petition for a writ of mandamus, Halsey challenged the trial court's modification of the confidentiality agreement. One of its arguments was that the modification "would allow the disclosure of trade secrets," and it cited Miltope in support of its argument. Id. at 1033. This Court granted Halsey's petition, concluding in part:

> "Because this information appears to meet the definition of a 'trade secret' in the [Alabama Trade Secrets Act, § 8-27-1 et seq., Ala. Code 1975,] we rely upon Ex parte Miltope for the resolution of this issue. Like Miltope Corporation, Halsey has been ordered by the trial court to produce information that can be disclosed to, among others, adverse parties to the litigation. Like the defendant in Miltope, the employee defendants left Halsey to work for a competitor. In Miltope, we ordered trade-secret protection despite a protective order prohibiting the defendant from using discovered information for competitive purposes. Miltope, 823 So. 2d at 642. Here, because the trial court removed the protections from all documents designated as highly confidential, this information is no longer insulated from use by the defendants for competitive purposes."

Id. at 1035 (emphasis other than "despite" added).

---

[12] "'[H]ighly confidential[ ]' [is] a term that all parties agree is the equivalent of 'restricted confidential.'" 897 So. 2d at 1031.

Miltope and Halsey do not help State Farm's argument for at least two reasons. First and foremost, in both Miltope and Halsey, there were allegations that former employees had taken trade secrets and were using them to help competitors. Indeed, in both of those cases, the former employees were working for competitors and seeking trade-secret information in discovery. That is a different context from the situation presented here: the Foors are not competitors of State Farm and it has not been alleged or shown that their counsel represent State Farm's competitors in any case in which the protective order permits the sharing of discovered information. The key reason this Court granted the petitions in Miltope and Halsey was because of the direct threat of competitors obtaining confidential or trade-secret information. That is unsurprising given that "[c]ourts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) (also citing supporting cases). State Farm has not established any such threat here because of the sharing provisions. See, e.g., Sweet v. Polaris Indus., Inc., No. 3:21-cv-40076-MGM, Mar. 31, 2022 (D. Mass. 2022) (not reported in Federal Supplement) (finding that the defendants had

"fail[ed] to explain how their competitors would come into possession of their confidential information through the limited sharing clause proposed by Plaintiff," a sharing clause that limited dissemination of information "to lawyers for other plaintiffs in similar cases, and ... required [those lawyers] to sign certifications agreeing to be bound by the terms of the protective order, agreeing to return copies of any materials produced under the terms of the protective order to [the defendants] at the time a final dismissal or judgment is entered in this case, and consenting to the jurisdiction of [the trial] court for purposes of enforcement of the protective order"). In fact, the protective order expressly states that "[s]uch materials shall not be produced to any commercial competitor insurer of the party producing the data."

Second, Miltope and Halsey presented a different issue than the one raised by State Farm in this case. Those cases concerned the trial courts' decisions to require one party to disclose any confidential information in discovery to the opposing party or parties. In fact, in Halsey, the trial court had removed all protections from documents that had been designated as highly confidential. In contrast, this case concerns whether sharing confidential information with nonparties

45

under the protective order's specific restrictions -- information that State Farm is willingly providing in discovery to the Foors -- poses an unnecessary risk of disclosure of State Farm's confidential or trade-secret information to State Farm's competitors. Unlike in <u>Miltope</u> and <u>Halsey</u>, State Farm's fear that the sharing provisions will lead to disclosure of its confidential information to competitors is solely based on assumed probability rather than on the fact that an opposing party is a competitor or works for one. See <u>Biazari v. DB Indus., LLC</u>, No. 5:16-cv-49, Apr. 26, 2017 (W.D. Va. 2017) (not reported in Federal Supplement) ("[A]s a matter of simple probability the risk of such disclosure (whether intentional or inadvertent) increases as more individuals gain access to this material."); <u>Byrd</u>, 26 N.E.3d at 864 ("Presumably, disclosure to collateral litigants increases the risk of harm from the disclosure of confidential information."). Other than hypothetical conjecture, State Farm has not demonstrated how it would be harmed by allowing the discovery materials to be shared in the specific existing cases in which the Foors' counsel represent other plaintiffs asserting identical bad-faith

46

claims against State Farm.[13] Rather, continued relitigation of the same dispute simply drives up costs for the parties, for the court system, and, ultimately, for the taxpayers.

State Farm's comparisons to Miltope and Halsey also ignore the safeguards stated in the protective order beyond the one we already have required to be emphasized, i.e., that the sharing is limited to, at most, the eight other cases the Foors' counsel already have commenced on behalf of other plaintiffs in which bad-faith claims involving roof damage have been asserted against State Farm. The protective order: (1) forbids dissemination of the information "to any commercial competitor insurer of the party producing the data"; (2) prohibits the information provided from being "otherwise ... sold, offered, advertised or publicized to any

---

[13]See, e.g., United States v. Hooker Chems. & Plastics Corp., 90 F.R.D. 421, 425 (W.D.N.Y. 1981) ("In this case, movant Hooker has alleged in a most conclusory fashion that it will suffer certain injuries. No specific instances are cited where trade secrets will be disclosed or where Hooker will be put at a competitive disadvantage."). Cf. Zakary A. Drabczyk, Share with Caution: The Dangers Behind Sharing Orders, 65 Wayne L. Rev. 401, 421 (2020) ("[N]o substantial disclosure of confidential information under a sharing order has been reported despite decades of discovery sharing."); Dustin B. Benham, Proportionality, Pretrial Confidentiality, and Discovery Sharing, 71 Wash. & Lee L. Rev. 2181, 2204-05 (2014) ("[D]ecades of experience with sharing protective orders shows that violations are relatively rare and violations involving a leak to a competitor are virtually nonexistent.").

media representative"; (3) requires "anyone outside the confines of the office of counsel" who receives the information to "agree in writing to the terms of this Stipulated Order"; (4) requires the recipient of the information to "maintain information in a secure and safe area and [to] exercise due and proper care with respect to the storage, custody and use of all such information"; (5) provides that "[t]he obligations of this Protective Order shall survive the termination of this action" and that the circuit court "will have continuing jurisdiction to enforce this Protective Order irrespective of the manner in which this action is terminated"; and (6) requires "each person or party who has received information" to return the information to State Farm or to destroy the information within 35 days "of the final determination of this action" and to certify that it has been destroyed.

State Farm discounts all the foregoing "protections" by arguing that "Miltope forecloses the notion that these kinds of generic safeguards cure an order that permits broad access and unmonitorable dissemination." State Farm's reply brief, p. 5. However, as we already have explained, Miltope's rejection of the protections present in the protective order in that case were squarely based on the fact that any confidential

48

information was being shared with a plaintiff who was, at that point, employed by a competitor to Miltope; it was not that the protections themselves would be inadequate in a case that does not present such a direct threat of confidential information falling into a competitor's hands. Moreover, as we also have explained, the primary sharing provision does not permit "broad access" to the information; it allows dissemination of information in a specific set of cases.

E. Clarifying Jurisdiction in the Protective Order

We note, however, that oral argument demonstrated that the issue of monitoring should be addressed. Counsel for the Foors stipulated in oral argument that the protective order should have included a provision that anyone with whom the discovery material is shared must agree to be subject to the jurisdiction of the circuit court.[14] Indeed, in cases in

---

[14]During oral argument, counsel for the Foors stated:

"In our sharing order, … we included a provision that anyone with whom we share a document must agree to be bound by that protective order and submit themselves to the jurisdiction of the Alabama court. … That provision did not make its way into the order. We will ask Judge Smithart to include that in the order. We will stipulate here if that's a better procedural way of doing it: that that provision that they must subject themselves to the jurisdiction of the court be

which sharing confidential information has been permitted outside the specific case in which that information is first produced, it is common to require those with whom the information is shared to agree to be subject to the jurisdiction of the court that entered the protective order. See, e.g., Alton, No. 3:13-CV-409-PK (discussing a proposed protective order that required that "'[c]ounsel for the Parallel Litigation must sign the agreement attached ... prior to the receipt of any Shared Discovery, confirming that he or she: ... agrees to be subject to the personal jurisdiction of this Court for the enforcement of the Protective Order, including, without limitation, violation of the confidentiality provisions'"); In re New Motor Vehicles Canadian Exp. Antitrust Litig.,

---

included in the order. I think it was just an inadvertent omission."

Supreme Court of Alabama, Supreme Court O/A Montgomery, Alabama, YouTube (June 3, 2026, 25:00-25:46) (at the time this decision was issued, this oral-argument session could be located at: https://www.youtube.com/watch?v=Rl844PuQjNc).

The Foors' proposed protective order did include as an exhibit an agreement that required signatories to agree to be bound by the terms of the protective order. However, neither their proposed protective order nor its attached exhibit contained any provision requiring that anyone with whom the confidential information is shared must agree to be subject to the jurisdiction of the Bullock Circuit Court.

MDL No. 03-md-1532, Mar. 26, 2009 (D. Me. 2009) (not reported in Federal Supplement) (implementing protective order requiring that "Canadian Plaintiffs agree to submit to the jurisdiction of this Court for the purposes of enforcement on this Protective Order" (emphasis omitted)); Ruggeri v. Boehringer Ingelheim Pharms., Inc., No. 3:06 CV 1985 (JBA), Oct. 3, 2007, n.7 (D. Conn. 2007) (not reported in Federal Supplement) ("Plaintiffs have agreed that 'confidential' information will only be disclosed to putative class members if reasonably necessary for litigation and only if the individuals, prior to disclosure, sign an Agreement to Be Bound by Protective Order and submit to the Court's jurisdiction to enforce the protective order."); Harris, No. 08-563 (discussing the following proposed addition to a protective order: " 'Before giving access to any of the Protected Documents or the information contained therein, each person described in paragraphs 2(k) and 2(l) above shall be advised of the terms of this Protective Order, shall be given a copy of this Protective Order, and shall agree in writing, by signing a copy of this Protective Order, to be bound by its terms and to submit to the jurisdiction of this Court.' ").

As we noted in the rendition of the facts, the protective order contained an exhibit -- designated as "Exhibit A" -- that consisted of the exhibit agreement in which a signatory acknowledges receiving and reviewing a copy of the protective order and agrees "to be bound by the terms thereof." The pertinent wording of that exhibit agreement was identical in the proposed protective orders from the Foors and from State Farm. Based on the authorities referenced herein and the Foors' stipulation in oral argument, the circuit court must modify that exhibit agreement to state that a signatory also agrees to submit to the jurisdiction of the Bullock Circuit Court for the purpose of enforcement of the protective order.

Moreover, to make it clear that the exhibit agreement applies to anyone to whom the confidential materials are disclosed, the following paragraph in the protective order also must be modified:

> "Confidential materials may be disclosed to attorneys or other office personnel, experts, contractors, and consultants, working with counsel for the requesting party in the prosecution of the case. If anyone outside the confines of the office of counsel is to receive information covered by this Stipulation, they must agree in writing to the terms of this Stipulated Order."

The language in the protective order instead should give effect to the principle that, before being given access to any of the confidential materials, each person -- whether an expert, a contractor, or a consultant working with counsel in this case or anyone involved in one of the other listed cases -- must sign the exhibit agreement as modified in accordance with the instructions herein.

F. The Protective Order's Return or Destroy Provisions

Oral argument also revealed a lack of clarity with respect to the portion of the protective order that State Farm refers to in its petition and reply brief as "the return or destroy provisions." State Farm's reply brief, p. 6. The paragraph of the protective order that contains the return or destroy provisions states:

> "Within thirty-five (35) days of the final determination of this action, each person or party who has received information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER shall be obligated to return the same to State Farm, including any copies, or to destroy such information and certify that it has been destroyed, except that the recipient need not destroy or return transcripts of depositions and materials filed with the Court, and party may retain one archival copy of all pleadings in the action, regardless of whether such pleadings (including appendices), contain or refer to information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER; subject to the legal requirements for maintenance and destruction of client files by the parties'

counsel. Within seven (7) days of the final determination of this action, counsel of record who has provided information designated as CONFIDENTIAL, TRADE SECRET, or SUBJECT TO PROTECTIVE ORDER to other individuals must inform those individuals that the matter has reached final determination and remind them of the return or destruction obligation."[15]

(Capitalization in original.)

In its petition and reply brief, State Farm argued that the return and destroy provisions "operate only after 'final determination of this action,' which does nothing to prevent copying, use, and downstream dissemination once the materials are routed into other cases or provided to third-party agencies." State Farm's reply brief, p. 6. But once the protective order is modified to ensure that anyone to whom the confidential information is disseminated agrees to be bound by the terms of the protective order and to be subject to the jurisdiction of the circuit court, it becomes clear that those individuals also would be subject to the return or destroy provisions.

However, during oral argument, counsel for the Foors was pressed by members of this Court about whether the language of the foregoing

---

[15]State Farm's proposed protective order contained an identically worded paragraph.

quoted paragraph from the protective order requires any person involved in another case who receives confidential information from this case to return or destroy the information "[w]ithin thirty-five (35) days of the final determination of <u>this action</u>," i.e., the <u>Foor</u> case. (Emphasis added.) Counsel for the Foors steadfastly insisted that

> "the order continues after the end of this particular <u>Foor</u> case and the court retains jurisdiction for purposes of this order, so the order would still be in full force and effect even though the <u>Foor</u> case ends. So, it would continue to apply, and we would continue to have these strict obligations as to how we handle these documents."

Supreme Court of Alabama, <u>Supreme Court O/A Montgomery, Alabama</u>, YouTube (June 3, 2026, 33:07-33:35) (at the time this decision was issued, this oral-argument session could be located at: https://www.youtube.com/watch?v=Rl844PuQjNc). Thus, counsel for the Foors appeared to be saying that "this action" did not refer to the present case but, rather, to any case to which the confidential information is permitted to be disseminated.

The position of counsel for the Foors plainly contradicts the language of the protective order. But the fault lies in the failure of the protective order to reconcile the presence of the sharing provisions with the language of the return and destroy provisions. Hypothetically, if the

parties in the present case reached a settlement before one of the other eight cases concluded, and confidential information from this case was scheduled to be a trial exhibit in one of the other cases, it would be absurd to suppose that the trial exhibit must be destroyed or returned before it could be used at the trial. Similarly, hypothetically, if one of the other cases ended before the present case, it would not make sense that everyone in the other terminated case who was given the confidential information from this case would be permitted to keep the confidential information until the present case concluded.

The solution to that conundrum is for a provision to be added to the protective order stating that termination of the present case shall not require the return of confidential information shared in the other listed cases if those cases are still in litigation. However, at the conclusion of each of the other listed cases, the deadlines and requirements for return or destruction of confidential information described in the protective order shall apply in those cases as well. Moreover, each person bound by the protective order shall continue to be subject to the jurisdiction of the circuit court for the purpose of enforcement of the protective order following the termination of the cases in which they are involved. Cf.

<u>Alton</u>, No. 3:13-CV-409-PK. Language to the foregoing effect will prevent any misunderstanding as to how long anyone is permitted to retain possession of confidential information provided by State Farm through discovery in this case.

### G. Parker <u>and</u> Robinson <u>Do Not Require a Different Outcome</u>

State Farm's only other objection to the limited sharing provision we have approved here is to argue that allowing any sharing provision interferes with the discretion each trial court possesses in making discovery determinations. That contention harks back to the notion we rejected in Part B of this analysis that Rule 26 implicitly prohibits discovery sharing. To support its argument, State Farm cites rulings in two of the Alabama federal district-court cases in which the Foors' counsel represent other plaintiffs who have asserted bad-faith claims against State Farm concerning roof damage. On November 7, 2025, Judge Nicholas A. Danella, United States Magistrate Judge for the Northern District of Alabama, held a hearing in <u>Parker v. State Farm</u> in which he rejected counsel for the plaintiffs' request to include a sharing provision in a protective order that concerned State Farm's confidential information. On January 21, 2026, Judge R. David Proctor, United States

District Judge for the Northern District of Alabama, held a hearing in Robinson v. State Farm concerning whether a sharing provision should be included in the protective order for that case. Judge Proctor, like Judge Danella, declined to include the proposed sharing provision.

In its reply brief, State Farm notes those rulings in Parker and Robinson, and it contends that "[a]llowing [the Foors] to use a state-court sharing mechanism to channel protected materials into those federal actions (and out-of-state cases) would undermine those courts' discovery rulings and spark collateral admissibility fights -- hindering, not advancing, efficiency." State Farm's reply brief, p. 9. In its petition, State Farm more generally argues that the sharing provision

> "undermines the independent authority of every other court -- federal or state -- in which [the Foors'] counsel might appear. Every tribunal has the exclusive right, under its own Rule 26(c), to decide whether confidential and trade secret information should be disclosed at all and, if so, under what protective conditions."

State Farm's petition, p. 22.

However, State Farm misunderstands the decisions that were presented to those federal district courts. In Parker and Robinson, the federal district courts were deciding whether to include the more expansive sharing provisions proposed by counsel in those cases; they

were not ruling on the provisions that are before us in Judge Smithart's order.[16] As we have extensively detailed, the provisions at issue here are much more limited in scope than the provisions included in the proposed protective order submitted by the Foors' counsel. Moreover, the fact that the circuit court in this case permitted sharing provisions in the protective order clearly had no binding effect on the courts in Parker and Robinson, which declined to allow the protective orders in those cases to include sharing provisions. Each court did make its own independent finding about the propriety of including a sharing provision.

Likewise, State Farm's contention that allowing information produced by State Farm in this case to be shared in those other cases undermines those courts' authority over discovery in their cases

---

[16]We also note that Judge Danella and Judge Proctor entered their rulings in Parker and Robinson, respectively, after Judge Smithart entered the protective order in this case. Thus, Judge Smithart did not have the benefit of those rulings in reaching his decision. In that respect, it is doubtful that this Court may even consider the substance of the rulings in Parker and Robinson because they were not before the circuit court. See, e.g., Ex parte Ebbers, 871 So. 2d 776, 786 (Ala. 2003) ("In determining, on mandamus review, whether the trial court exceeded the limits of its discretion, 'the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling.'" (quoting Ex parte Wiginton, 743 So. 2d 1071, 1073 (Ala. 1999))).

59

misunderstands the matter presented for decision to the circuit court concerning the inclusion or noninclusion of the sharing provisions. A court that concludes that a sharing provision is appropriate does so based on an initial assessment that "the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided" by including the sharing provision. Foltz, 331 F.3d at 1132. This is because "[t]he court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery." Id. But that court "does not decide whether the collateral litigants will ultimately obtain the discovery materials" because "[t]he disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts." Id. at 1133. See, e.g., Choi v. 8th Bridge Cap., Inc., No. 2:17-cv-08958-CAS-AFMx, Mar. 30, 2021 (C.D. Cal. 2021) (not reported in Federal Supplement) ("The Court need only make 'only a rough estimate of relevance' to determine 'whether the protective order will bar the collateral litigants from gaining access to the discovery already conducted.' Foltz, 331 F.3d at 1132-1133. ... The Court makes no finding regarding the relevance of

any specific documents to the [Los Angeles County Superior] Court action."); Buntin v. Schlumberger Tech. Corp., No. 3:16-cv-00073-TMB, Nov. 29, 2018, n.24 (D. Alaska 2018) (not reported in Federal Supplement) ("The Court notes that it is the Alaska state court's decision as to whether the public documents should ultimately be disclosed in response to the subpoena and notice; this Court's determination is only as to the scope of the Protective Order."); Creative Compounds, LLC v. Adorno & Yoss LLP, No. 1:09CV129 SNLJ, Dec. 12, 2013 (E.D. Mo. 2013) (not reported in Federal Supplement) ("In amending the protective order, this Court does not decide whether movant will ultimately obtain the discovery materials. The objections raised by Creative Compounds as to whether some of the documents are subject to the attorney-client privilege, whether the documents are relevant, that the discovery deadline in the L & F Litigation has expired, and that it would be unduly burdensome for it to review the voluminous records are objections to be brought in the L & F Litigation [in the United States District Court for the Southern District of Florida]."). In other words, there is a difference between what a protective order permits with respect to sharing

information in other cases and how other courts <u>allow that shared information to be used</u> in their cases.

State Farm's complaint also rings hollow given that, in previous cases commenced by the Foors' counsel on behalf of other plaintiffs, it has agreed to protective orders -- absent a sharing provision -- that allowed the plaintiffs in those cases to have access to similar confidential and trade-secret information. That also occurred in <u>Parker</u> after the protective order was entered in this case. Indeed, in its reply brief, State Farm openly states: "State Farm routinely produces relevant confidential materials once a standard protective order is in place, and it has agreed to do so here." State Farm's reply brief, p. 8. As the Foors observe:

> "State Farm presumably would be agreeable to entering its proposed [protective] order in other similar cases, … and [the Foors] would be entitled to see these documents anyway.
>
> "<u>The only difference relates to timing and use of judicial resources</u>. By setting up a system wherein plaintiffs have to agree to a protective order in each case to see these same materials, State Farm can refuse to produce obviously relevant discovery materials until it agrees to a protective order, a process that can take months in each case. As a result, the effect of State Farm's position is to create unnecessary delay and waste of judicial resources …."

Foors' answer, pp. 21-22 (emphasis added). "[T]he purpose of limiting the dissemination of proprietary information is to protect the producing

62

party from competitive disadvantage in the marketplace, not to make litigation more burdensome for its adversaries." Biazari, No. 5:16-cv-49.

H. The Government-Sharing Provision

The other provision in the protective order to which State Farm objects concerns sharing the confidential materials with government entities. As we noted in the rendition of facts, that provision states:

> "Any such materials may be disclosed to any governmental agency, which has oversight authority to study issues pertinent to the insurance product at issue. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential."

State Farm complains that the foregoing provision permits disclosure of its confidential and trade-secret information to "unnamed governmental entities nationwide." State Farm's petition, pp. 2-3. State Farm posits that, "[o]nce disclosed to such agencies, State Farm's confidential and trade secret information could be subject to [Freedom of Information Act] or state open-records requests, exposing it to the public and State Farm's competitors." Id., p. 4. State Farm further objects that the only limitation in the protective order against government agencies

is that State Farm can "ask the agency to maintain confidentiality"; nothing requires that "the agency agree to be bound" by the terms of the protective order or by the jurisdiction of the circuit court. State Farm's reply brief, p. 6 (emphasis in original).

In oral argument, State Farm asserted that, in contrast to the protective order's government-sharing provision, its own proposed protective order permitted confidential information to be shared with only the Alabama Department of Insurance and not with other government entities. State Farm also asserted that its protective order would have required a person from the Alabama Department of Insurance to sign the exhibit agreement in which a person agrees to be bound by the protective order.

However, in both respects, State Farm's assertions are incorrect. State Farm's proposed protective order permitted confidential and trade-secret information to be disclosed to "the Alabama Department of Insurance, law enforcement officers, and/or other governmental agencies, as permitted or required by applicable state and federal law." (Emphasis added.) Thus, although State Farm's proposed protective order did expressly name the Alabama Department of Insurance, it also allowed

64

disclosure of confidential information to "unnamed governmental entities." Moreover, the provision in State Farm's proposed protective order did not require a representative of the Alabama Department of Insurance or "other governmental entities" to sign the exhibit agreement, and so such entities would not have been bound by the terms of the protective order or have been subject to the jurisdiction of the circuit court for the purpose of enforcement of the protective order. Likewise, State Farm's proposed protective order did not prohibit the confidential information from being subject to a federal Freedom of Information Act ("FOIA") request or a state open-records request.[17]

In short, there is no discernable difference between State Farm's proposed protective order and the circuit court's protective order concerning the disclosure of confidential information to government entities. Indeed, in its reply brief, State Farm makes no attempt to differentiate the provision in its proposed protective order from the provision in the circuit court's protective order, and, as we have noted, in

---

[17]It is unclear how a protective order could shield information provided to a government entity from a FOIA request or a state-open records request, which is perhaps why State Farm offered no such language in its own proposed protective order.

65

oral argument, State Farm simply misstated the contents of its own proposed protective order with regard to this issue. Given those facts, we conclude that the circuit court did not exceed its discretion in any respect regarding its inclusion of the government-sharing provision in the protective order.

## IV. Conclusion

There is nothing inherently wrong with the inclusion of a sharing provision in a protective order. Such a provision is not contrary to the Rules of Civil Procedure in general or to Rule 26 in particular. However, common sense dictates that sharing provisions must contain limitations. After all, "[i]t is well-settled that discovery in one matter is not intended to afford a party an opportunity to seek information for an unasserted claim, or a yet-to-be filed case." Strough v. General Motors LLC, No. 18-cv-03303-PAB-NRN, June 4, 2019 (D. Colo. 2019) (not reported in Federal Supplement). Limitations are particularly important when, as in this case, a protective order concerns the production of confidential, proprietary, or trade-secret information. In this case, the circuit court's protective order included several meaningful restrictions intended to protect information State Farm designates as confidential.

However, we conclude that the protective order must be modified to ensure that the information is not shared in a manner that harms State Farm. First, the protective order must be clarified to list the specific cases in which the Foors' counsel are permitted to use the discovery materials furnished to them by State Farm, which is, at most, the eight other cases listed in the Foors' proposed protective order. Second, the circuit court must modify the exhibit agreement attached to the protective order so that it will state that a signatory also agrees to submit to the jurisdiction of the Bullock Circuit Court for the purpose of enforcement of the protective order. Third, the protective order must state that, before access is given to any confidential materials, each person -- whether an expert, a contractor, or a consultant working with counsel in this case or anyone involved in one of the other listed cases -- must sign the exhibit agreement that binds the signatory to the provisions of the protective order and renders the signatory subject to the jurisdiction of the circuit court for the purpose of enforcement of the protective order. Finally, the protective order must state that termination of the present case shall not require the return of confidential information shared in the other listed cases if those cases are still in litigation. However, at the conclusion of

67

each of the other listed cases, the deadlines and requirements for return or destruction of confidential information described in the protective order shall apply in those cases as well. Moreover, each person bound by the protective order shall continue to be subject to the jurisdiction of the circuit court for the purpose of enforcement of the protective order following the termination of the cases in which they are involved.

Of course, by requiring the modifications to the protective order described herein, we do not intend to limit the circuit court's inherent discretion to add any further limitations it may deem necessary as the case progresses. Indeed, the protective order provides as much, stating that the circuit court "[s]hall retain jurisdiction to modify the terms of this Protective Order." Because the relief we order is not the full relief requested by State Farm, we deem the petition to be granted in part and denied in part.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Stewart, C.J., and Sellers and McCool, JJ., concur.

Cook, J., concurs in part and concurs in the result, with opinion.

Bryan, J., concurs in part and dissents in part, with opinion.

Parker, J., concurs in the result in part and dissents in part, with opinion.

Shaw, J., dissents, with opinion, which Wise, J., joins.

COOK, Justice (concurring in part and concurring in the result).

I concur with the main opinion except as to Part III.H., which discusses the government-sharing provision in the circuit court's protective order. As to that part, I concur only in the result.

The main opinion correctly rejects State Farm's assertions that (1) its proposed protective order allowed sharing with only the Alabama Department of Insurance and (2) its proposed protective order required a representative of the Alabama Department of Insurance to sign the exhibit agreement. Neither of those assertions are accurate.

However, the main opinion then contends that "there is <u>no discernable difference</u> between State Farm's proposed protective order and the circuit court's protective order concerning the disclosure of confidential information to government entities." ____ So. 3d at ____ (emphasis added). I do not believe that is an accurate characterization of the following language in those documents:

| Circuit Court's Protective Order | State Farm's Protective Order |
|---|---|
| "Any such materials may be disclosed to <u>any governmental agency</u>, which has <u>oversight authority to study issues pertinent to the insurance product</u> at issue. ..." | "8. Information designated ... by State Farm shall be disclosed only to the following persons:<br><br>".... |

70

| | "(h) the <u>Alabama Department of Insurance, law enforcement officers, and/or other government agencies, as permitted or required by applicable state and federal law</u>." |
| --- | --- |

(Emphasis added.)

Stated simply, the circuit court's protective order allows disclosure to "<u>any</u> governmental agency" with oversight "pertinent to the insurance products at issue," while State Farm's proposed order limits the disclosure to "the Alabama Department of Insurance, law enforcement officers, and/or other government agencies, as permitted or required by applicable state and federal law." (Emphasis added.) In my view, the language in the circuit court's protective order sweeps more broadly than State Farm's proposed order in at least two ways.

First, I read State Farm's proposed order as a limitation permitting sharing only to relevant "Alabama" government agencies. The explicit demarcation of the "Alabama" Department of Insurance should restrict how to interpret the phrase "other government agencies." <u>See, e.g.</u>, <u>Ex parte City of Millbrook</u>, 304 So. 3d 202, 205-06 (Ala. 2020) (plurality opinion) (explaining that, under the associated-words canon, or <u>noscitur</u>

a sociis, "'general and specific words'" associated with one another "'take color from each other,'" such that general terms are restricted to a meaning analogous to the specific terms) (citation omitted). I do not read State Farm's language to permit sharing discovered documents to, say, the New York Department of Insurance, and I cannot envision an argument supporting a provision authorizing the sharing of State Farm's trade secrets with the New York Department of Insurance.

Second, in the context of trade secrets, "permitted" means that federal or state trade-secret law expressly permits the sharing of the documents at issue, not simply that such laws fail to prohibit the sharing of those documents. An example of a federal law that expressly permits a person to give the government trade secrets that belong to someone else is 18 U.S.C. § 1833(b). That section provides that an individual is not liable "under any Federal or State trade secret law for disclosing of a trade secret that … is made … solely for the purpose of reporting or investigating a suspected violation of law." 18 U.S.C. § 1833(b)(1)(A)(ii). In other words, even under federal law, such persons would be "permitted" to make -- that is, would not be liable for making -- such a disclosure. Absent such authority under 18 U.S.C. § 1833(b) (or other

72

similar provisions), a person would not be "permitted" to disclose someone else's trade secrets to anyone.

In light of the foregoing, I would support use of the government-sharing language that State Farm included in its proposed order because, as State Farm notes, the current government-sharing provision may effectively mean that its confidential information will not be protected at all.

Despite my concerns here, State Farm did not raise either of these legal arguments to the circuit court or in its petition for the writ of mandamus to our Court. For this reason and because this case is before us on mandamus, I must concur in the result on this issue. However, our decision today should not be read as agreeing with the use of this type of government-sharing provision in other cases going forward or even as agreeing with the use of State Farm's proposed government-sharing language in other cases going forward.[18]

---

[18]I recognize the concerns raised by Justices Shaw and Parker as to the sharing provisions generally. However, the main opinion makes clear that the relevant question is what provisions should be included in the protective order entered by the circuit court -- not whether discovery should be produced. I note that the main opinion expressly limits the nonparty-sharing provision to "specific existing cases in which the Foors' counsel represent other plaintiffs asserting identical bad-faith claims."

_____ So. 3d at _____.  Although this language allows for sharing, this clarifying language places tight controls on the sharing of discovery.  In crafting a protective order in these types of situations, a trial court has discretion, and I believe that the language in the protective order, as clarified by the main opinion, shows that the circuit court did not abuse that discretion. I further believe that the protective order, as clarified by the main opinion, balances the need to promote the efficient, speedy, and inexpensive resolution of litigation while protecting the legitimate value of the confidential and trade-secret information of State Farm. However, to be clear, just because the circuit court acted within its discretion to include the sharing provisions in the protective order in this particular case does not mean that sharing provisions should be commonplace.  In my view, because of the risks associated with the disclosure of confidential and trade-secret information, sharing provisions should be rarely used and tightly controlled.  In fact, in my view, the circuit court in this case would also have been within its discretion to not include sharing provisions.

74

BRYAN, Justice (concurring in part and dissenting in part).

I concur in the main opinion insofar as it denies the petition on the ground that the circuit court did not clearly exceed its discretion in issuing the protective order containing "sharing" provisions. However, I dissent from the main opinion insofar as it grants the petition and instructs the circuit court to modify the protective order in various ways. Although those modifications would improve the protective order, the issue before us is whether the circuit court "clearly exceeded its discretion" by entering the order. Ex parte Ocwen Fed. Bank, FSB, 872 So. 2d 810, 813 (Ala. 2003). Of course, this standard of review is very deferential to the circuit court. Despite any weaknesses in the protective order, it does not appear to me that the circuit court clearly exceeded its discretion here. Further, it does not appear that State Farm asks for the ordered modifications, which address shortcomings in the sharing provisions. Instead, State Farm seeks the removal of the sharing provisions; it asks us to vacate the protective order and to order the circuit court to issue a protective order that "does not contain a 'sharing' provision granting power to Plaintiffs' counsel to disclose State Farm's confidential material to third parties." State Farm's petition at

26. Because I do not believe that the circuit court clearly exceeded its discretion by issuing the order with the sharing provisions, I would simply deny the petition rather than grant it in part and deny it in part.

PARKER, Justice (concurring in the result in part and dissenting in part).

I agree with the main opinion in many respects. I agree, for example, that this case gives us no occasion to make "[s]pecific [d]eterminations" about the confidentiality of any information State Farm will produce during discovery. ___ So. 3d at ___. I agree that the challenged order is considerably more protective of State Farm's confidential information than would appear from the parties' arguments. And I agree that this Court's decisions in Ex parte Miltope Corp., 823 So. 2d 640 (Ala. 2001), and Ex parte W.L. Halsey Grocery Corp., 897 So. 2d 1028 (Ala. 2004), do not squarely resolve any issue before us.

Having said all this, I remain concerned about the broader theory underlying the nonparty-sharing provision at issue in this case. To me, the idea that a court may affirmatively allow a party's top-secret business information to be used in other litigation by nonparties -- at least absent some documented need for it in the case at hand -- runs counter to the text and structure of our Rules of Civil Procedure. It also seems to run counter to other courts' (nonbinding) precedent, at least the subset of that precedent I find persuasive.

77

I.

Rule 26 permits a court, "for good cause shown," to issue an order "to protect a party or person" from "undue burden." Ala. R. Civ. P. 26(c). Among the measures available is a "[p]rotective [o]rder[]" under Rule 26(c)(7) requiring that confidential business information -- specifically, a "trade secret or other confidential research, development, or commercial information" -- either (1) "not be disclosed" or (2) "be disclosed only in a designated way." That language undoubtedly gives a court some authority to regulate disclosure of confidential business information during discovery. But how much?

We know for one thing that a court may exercise this authority only to "protect" the confidential business information in question -- that is, to "cover or shield" the information "from exposure." Merriam-Webster's Collegiate Dictionary 1275 (12th ed. 2026). It also seems reasonable to assume that "disclosure [of such information] to collateral litigants increases the risk of harm" to the business. Byrd v. U.S. Xpress, Inc., 26 N.E.3d 858, 864 (Ohio Ct. App. 2014). In my view, these considerations cut against the validity of nonparty sharing -- even on the face of Rule 26(c)(7).

78

On the other hand, the relevant language is admittedly ambiguous. A court's authority to allow disclosure of protected information "only in a designated way" might allow limited nonparty sharing along the lines set forth in the main opinion. But it might just as well disallow nonparty sharing entirely. Under this latter view, a Rule 26(c)(7) protective order would still allow <u>disclosure</u> of confidential business information, just for purposes related to the current pending case. For example, the order could specify who on the plaintiff's litigation team may receive the information, subject to whatever safeguards the court reasonably deems appropriate. But the authorized disclosure would be only for the purpose of prosecuting a particular plaintiff's claims in a particular pending case.

In my view, the structure of the Rules resolves any such ambiguity in favor of this latter reading. The Rules are all organized around the management of individual civil actions. This theme emerges at the beginning of the Rules, where Rule 3 proclaims that "[a] civil action" begins by filing "a complaint" with "the court." Ala. R. Civ. P. 3(a). And it carries through to the end, where Rule 58 says that a judgment will suffice if, among other requirements, "it" is signed or initialed by "[the] judge." Ala. R. Civ. P. 58(a). When the Rules depart from the ordinary

79

model of a single civil action -- think: joinder of parties, class actions, intervention, consolidation -- they do so only expressly. See Ala. R. Civ. P. 19 (joinder), 23 (class actions), 24 (intervention), 42 (consolidation). These departures thus only underscore that the Rules govern a single, particular civil action unless expressly provided otherwise.

The discovery rules parallel the architecture of the Rules as a whole. Rule 26(b)(1), for example, permits discovery only of matters relevant to the subject of "the pending action" and proportional to the needs of "the case." And the various methods of discovery -- for example, depositions or interrogatories -- ordinarily become available only "[a]fter commencement of the action." Ala. R. Civ. P. 30(a) (oral depositions); see also, e.g., Ala. R. Civ. P. 31(a) (written depositions); 33(a) (interrogatories); 34(b) (document production).

But special rules nevertheless exist for discovery efforts outside the confines of a currently pending case. When a party wants to compel discovery before an action is commenced, the party must follow special procedures set forth in Rule 27, "Discovery Before Action or Pending Appeal." And if a party wants to compel discovery from someone other than a party, the party must ordinarily invoke the Rule 45 subpoena

process. In other words, once again, the Rules govern discovery within a particular case unless expressly provided otherwise.

Here, there is nothing in Rule 26(c)(7) that expressly provides any reason to think that it departs from the ordinary, single-action framework described above. I thus read Rule 26(c)(7) as allowing a court to permit disclosure of confidential business information "only in a designated way" <u>for purposes of the current lawsuit</u>. Of course, the nonparty-sharing provision at issue here, even as carefully refined by the main opinion, violates that principle. To my knowledge, nothing in the materials before us demonstrates why or how the nonparty-sharing provision is justified by the needs of the <u>current</u> litigation.

## II.

Text and structure aside, what about precedent? There is considerable precedent in the area of nonparty-sharing provisions, and it would be impossible for anyone to exhaustively or comprehensively survey it all. This body of precedent, moreover, strikes me as sprawling and disjointed. Nevertheless, two themes emerge. Each of them illustrates that not all precedents are created equal -- that some decisions

are more persuasive than others. And here, the more persuasive precedent reinforces my concerns about nonparty-sharing provisions.

A.

First, the legal grounds originally asserted in support of nonparty-sharing provisions appear to have become obsolete. In the 1970s, sharing advocates cited the First Amendment, arguing that court orders restricting use of information obtained in discovery would violate their right to free speech. See Dustin B. Benham, Proportionality, Pretrial Confidentiality, and Discovery Sharing, 71 Wash. & Lee L. Rev. 2181, 2194 (2014). The United States Supreme Court eventually rejected that approach, however, in a decision multiple courts have read as "effectively remov[ing] the First Amendment from the protective-order analysis." Id. (citing Seattle Times Co. v. Rhinehart, 476 U.S. 20 (1984)).

Similarly, sharing advocates at one point cited a former version of Federal Rule 5, which required all discovery materials to be filed in court. See id. at 2195. To the sharing advocates, this rule created a right of public access to unredacted discovery materials. See id. But "[a] series of rules amendments, culminating in a 2000 amendment that [generally] forbids parties from filing discovery … effectively ended" this Rules-

based argument as well. Id. at 2196. The current Alabama Rules similarly do not allow filing of discovery materials. See Ala. R. Civ. P. 5(d).

There may be other legal grounds that justified early nonparty-sharing provisions. But legal changes like the ones described here at least offer a plausible explanation for why the body of precedent concerning nonparty sharing may have shifted over time.

B.

Second, many of the more recent cases rejecting nonparty sharing turn on just the sort of textual and structural concerns outlined above. See Part I. In one case, a federal court rejected a "preemptive" sharing provision precisely because "the sole purpose of discovery is to assist the parties to litigation in the preparation of their specific case for trial or settlement." Shaw v. Shandong Yongsheng Rubber Co. Ltd., No. 1:18-cv-00867-RM-SKC, Oct. 30, 2019 (D. Colo. 2019) (not reported in Federal Supplement). In other cases, federal courts rejected sharing at least in part because the plaintiff had failed to demonstrate prejudice to "her ability to … support … her own claims," Clippard ex rel. Clippard v. Yamaha Motor Corp., No. 5:14-CV-83-R, Mar. 17, 2015 (W.D. Ky. 2015)

(not reported in Federal Supplement), or because the "Plaintiff ha[d] made no showing that sharing ... is necessary and relevant to <u>this</u> case," <u>Easterwood v. Husqvarna Prof'l Pros., Inc.</u>, No. 2:19-CV-1065-WKW-WC, July 27, 2020 (M.D. Ala. 2020) (emphasis added) (not reported in Federal Supplement). One court put it even more bluntly: "[I]nclusion of a 'sharing' provision in the protective order is not necessary nor warranted for the purposes of <u>this</u> litigation, and that is the only important consideration." <u>Ginn v. Stryker Corp.</u>, No. 1:09-cv-01939-HGD, May 14, 2020 (N.D. Ala. 2010) (not reported in Federal Supplement).

## III.

The nonparty-sharing literature features a healthy debate about whether it produces efficiency in terms of reduced time and expense of discovery -- values and ideals that are laudable indeed. But we must pursue those values within the rules as they are written.

To that end, it bears emphasizing that the unavailability of the kind of nonparty-sharing provision at issue here, unjustified by the needs of the current case, would not seriously impede the plaintiffs' counsel from advocating on behalf of their other clients. Nothing in my opinion forecloses their use of State Farm's information that will <u>not</u> be protected

as confidential. Nor does anything in my opinion require them to "unlearn" what they might glean from any protected confidential information they encounter here -- so long as they do not disclose the information itself. And if State Farm needlessly resists discovery in those other matters, the courts will be there to intervene. See Ala. R. Civ. P. 37 (discovery sanctions). Courts should guard against "evasive or incomplete" discovery answers, Ala. R. Civ. P. 37(a)(3), just as they should enforce the requirements that discovery requests be "relevant" and "proportional to the needs of the case," Ala. R. Civ. P. 26(b)(1).

\* \* \*

I agree that we cannot grant State Farm's petition as to the government-sharing provision either because of invited error, see ___ So. 3d at ___, or because of a failure to preserve the relevant arguments, see ___ So. 3d ___ (Cook, J., concurring in part and concurring in the result). I therefore concur in denying State Farm's petition as to this provision, even as I dissent more broadly (and even though I would be skeptical of such a provision if reviewing it unencumbered by the procedural posture of this case).

SHAW, Justice (dissenting).

In its petition for the writ of mandamus, State Farm Fire and Casualty Company ("State Farm") challenges a protective order entered by the Bullock Circuit Court allowing certain information disclosed in discovery to be "shared" by the respondents, James M. Foor and Krystina Foor, with parties in other cases. In my view, as recognized in part by the main opinion, the trial court exceeded its discretion by entering that order.

Generally speaking, persons have inherent privacy interests in their own information, documents, and intellectual property. Those interests, as weak as they may sometimes be, are justifiably imposed upon in civil litigation, where parties have the ability, in pursuit of their claims or defenses, to seek certain information from others through discovery. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984) (noting generally that "discovery … may seriously implicate privacy interests of litigants and third parties"). Discovery's imposition upon parties' interests in the privacy of their information is regulated by Rule 26, Ala. R. Civ. P. Rule 26(b)(1) states the general scope of discovery as follows:

"<u>Parties</u> may obtain discovery regarding any matter, not privileged, which is: (i) <u>relevant</u> to the subject matter involved <u>in the pending action</u>, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party; and (ii) proportional to the <u>needs of the case</u>, considering the importance of the issues at stake <u>in the action</u>, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving <u>the issues</u>, and whether the burden or expense of the proposed discovery outweighs its likely benefit. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

(Emphasis added.)

The scope of discovery is, by necessity, generously broad, but there are limits: only the <u>parties</u> to the action may obtain information through discovery, and the information sought must be relevant to the issues in <u>that</u> particular action. The rule focuses on the actual parties, in this case, the Foors, and the specific case before the trial court. It imposes prerequisites on the ability to obtain discovery. Importantly, however, it creates no right of imposition (1) in favor of nonparties, (2) regarding irrelevant issues, or (3) in cases that are not pending before the trial court. It is true that Rule 26 does not explicitly state what can be done with information obtained in discovery. Specifically, the rule does not address whether a party in a case who can obtain certain information

through discovery may pass it on to others who otherwise could <u>not</u> obtain it in that case. But other parties in other cases have no right or justification to seek discovery outside their own cases. Instead, parties must demonstrate in their own cases that what they seek is discoverable under Rule 26. The sharing of information obtained through discovery, as State Farm argues, evades the application of Rule 26 in other cases, which may involve materially distinguishable facts. Further, I note that nothing in the rule provides a court with the authority to specifically authorize the distribution of the fruits of discovery.[19]

The issue whether information obtained through discovery, generally, may be shared is not before us in this matter. Instead, this case involves a narrow type of information sought to be obtained and shared: trade secrets or other confidential research, development, or

---

[19]This is not to suggest that information obtained in discovery is, by default, secret. Such information often wends its way into public availability by being included in public court records or introduced at trial. Court records and in-court proceedings are generally open to the public, with limited exceptions. Further, testimony in depositions and information in documents often invoke little concern with privacy, confidentiality, and public disclosure; thus, the imposition created by discovery often has few material or objectionable consequences to the producing party, who may have no objection to the sharing or publication of the information obtained.

commercial information. Under Rule 26, such information may be protected from disclosure "or be disclosed only in a designated way." Rule 26(c)(7). It has greater protections from exposure. See Ex parte Miltope Corp., 823 So. 2d 640, 645 (Ala. 2001) ("Trade secrets should receive greater protection from discovery because they 'derive[] economic value from being generally unknown and not readily ascertainable by the public.'" (citation omitted)); Ex parte W.L. Halsey Grocery Co., 897 So. 2d 1028, 1035 (Ala. 2004) (holding that the trade-secret information at issue in that case was "entitled to protection in excess of that provided in the normal discovery process"); and Rule 507, Ala. R. Evid. ("A person has a privilege ... to refuse to disclose and to prevent other persons from disclosing a trade secret .... If disclosure is directed, the court shall take such protective measures as the interest of the holder of the privilege and of the parties and the interests of justice require."). Cf. Ex parte Industrial Warehouse Servs., Inc., 262 So. 3d 1180, 1187 (Ala. 2018) (rejecting an argument that certain trade secrets and confidential information sought in discovery and subject to a protective order "should be made public").

Rule 1(c), Ala. R. Civ. P., states that the Rules of Civil Procedure "shall be construed and administered to secure the just, speedy and inexpensive determination of every action." Certainly, the sharing of information obtained in discovery in one case with parties in another case could, depending on the circumstances, be expeditious and reduce litigation costs.[20] However, a discovery-sharing scheme that, as in this case, necessarily requires an array of consent forms, specific storage and custody provisions, stipulations on retention and return, notice and reporting requirements, and the need for the trial court to extend its jurisdiction and oversight over strangers to the case, possibly for some unknown time after the entry of a final judgment, does little more than create new burdens or merely shift existing burdens around, all the while increasing the risk of improper dissemination of protected, confidential

_____

[20]The process of discovery in litigation is to aid in the determination of legal controversies between adverse parties. Seattle Times Co. v Rhinehart, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."). The purpose is not to expose parties' otherwise nonpublic information or make it available for public inspection. Such exposure might occur, and it might benefit the public or counsel in other cases, but that is not its purpose. While attorneys representing parties might find other uses for materials generated in discovery, Rule 26 itself provides them no personal rights or privileges.

information. Given that Rule 26 cautiously governs access to trade secrets and other confidential information and has general limitations on who may obtain information provided in discovery and what may be obtained, I cannot "construe" or apply Rule 1(c) in a way that ultimately cuts against the clear protections contemplated in that rule.

An order by a trial court that allows the "sharing" of trade secrets or other protected confidential information -- even despite a lack of language in the rule prohibiting such sharing -- is nonetheless antithetical to the general process of discovery as set forth in Rule 26 and the specific protections provided with respect to trade secrets and other protected confidential information. I cannot uphold the trial court's order in the respects that the writ requires; therefore, I must respectfully dissent.

Wise, J., concurs.